IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES D. NEWMAN, | No. C 05-2989 SBA |
| Plaintiff, | |
| v. | **ORDER** |
| MARC SHERMAN, | [Docket Nos. 3, 4, 22] |
| Defendant.                            / | |

This matter comes before the Court on Defendant Marc Sherman's ("Defendant") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, To Transfer Venue Pursuant to 28 U.S.C. § 1406(a) and/or 28 U.S.C. § 1404(a) ("Motion to Dismiss") [Docket No. 3], and Defendant's Request for Judicial Notice [Docket No. 4].

Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing.[1] The Court hereby DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, GRANTS Defendant's Request for Judicial Notice, and GRANTS Defendant's alternative Motion To Transfer Venue Pursuant to 28 U.S.C. § 1404(a). This case is hereby ordered TRANSFERRED to the United States District Court for the Southern District of Florida.

**BACKGROUND**

**A.    Factual Background**

In the summer of 1996, Defendant Marc Sherman ("Sherman" or "Defendant"), who at the time resided in New Jersey, was approached by his brother-in-law, David Weaver, regarding an equity ownership opportunity in an entity known as Higher Education Services, LLC ("HES"), a California limited liability company. Decl. of Marc Sherman I.S.O. Mot. to Dismiss ("Sherman Decl.") at ¶ 5.

---

[1] Due to the Court's determination that this matter may be resolved without a hearing, the parties' Stipulation to Continue Hearing [Docket No. 22] is DENIED AS MOOT.

Thereafter Defendant invested in HES and in Eduprise, LLC ("Eduprise"), another California limited liability company. *Id.* At the time, Eduprise and HES were headquartered in Rohnert Park, California.[2] Compl. at ¶ 6. Eduprise formed a school known as Western Institute of Science and Health ("WISH") and, initially, HES provided certain curriculum materials to Eduprise. *Id.* at ¶ 10. Between 1999 and 2002, Defendant was the managing director of HES. *Id.* at ¶ 9; Newman Decl. at ¶¶ 4-7; Not. of Rem. at ¶ 3. Defendant's investment and involvement with the schools, both initially and on an ongoing basis occurred primarily through a series of e-mails, telephone calls, and meetings, all of which took place in New Jersey, New York, or Florida. Sherman Decl. at ¶ 6. Over the course of time, Sherman invested approximately $1,500,000 in Eduprise and HES. Not. of Rem. at ¶ 4; Sherman Decl. at ¶ 9.

On or about May 1999, Defendant's cousin, Plaintiff Charles D. Newman ("Newman" or "Plaintiff"), a New York resident, acquired a membership interest in Eduprise and HES. Compl. at ¶¶ 5, 9; Not. of Rem. at ¶ 3.

During the week of August 19, 1999, Plaintiff visited the headquarters of Eduprise and HES in California in order to conduct business between HES and WISH relating to HES' development of a distance education program for WISH. Newman Decl. at ¶ 4. Defendant was also present and participated in this business on behalf of HES and on behalf of himself, a shareholder of HES. *Id.*

At some point in 2000, Defendant moved his residence from New Jersey to Palm Beach, Florida. Sherman Decl. at ¶ 3.

During the week of March 20, 2000, Plaintiff visited San Francisco to conduct business between HES and WISH relating to the installation of computer equipment. Newman Decl. at ¶ 5. HES was managing WISH and was developing a new medical billing and insurance coding program. *Id.* Defendant was also present and participated in this business on behalf of HES and on behalf of himself, a shareholder of HES. *Id.*

---

[2] Eduprise and HES are currently located in Petaluma, California. Decl. of Charles D. Newman I.S.O. Opp. ("Newman Decl.") at ¶ 3.

During the week of April 12, 2001, Plaintiff again visited the headquarters of Eduprise and HES in California to conduct business between Eduprise and WISH in connection with Eduprise's planned purchase of WISH. *Id.* at ¶ 6. Defendant was also present and participated in this business on behalf of HES and on behalf of himself, a shareholder of HES. *Id.* Eduprise subsequently purchased WISH in August 2001. *Id.* After the acquisition of WISH, WISH became known as Sonoma College. Compl. at ¶ 8.

Between March and April 2002, Plaintiff believes that Defendant had several business meetings in California with Edward Schwartz, the President of WISH. Sherman Decl. at ¶ 7.

Eduprise incurred losses each and every year after Plaintiff's investment. *Id.* at ¶ 11. To enable Eduprise to continue to operate, Plaintiff contributed substantial amounts of capital to it. *Id.* However, Defendant failed and refused to contribute his proportionate share. *Id.*

In 2003, Defendant, who was in the midst of certain critical filings with the Securities and Exchange Commission related to another entity, expressed concern to Plaintiff about Defendant's affiliation with Eduprise because of Eduprise's losses and debts. *Id.* at ¶ 12. Defendant stated that he did not want to contribute any further capital to Eduprise and that he wanted to eliminate his personal exposure related to Eduprise and HES. *Id.* at ¶ 12. Several other members of Eduprise and HES expressed similar concerns. *Id.*

Accordingly, in early April 2003, Plaintiff called Defendant at his house in Palm Beach, Florida and proposed a deal regarding the potential transfer of interest in the companies. Sherman Decl. at ¶ 10. The proposal was sent via facsimile to Defendant's residence in Florida. *Id.* Subsequently, on April 15, 2003, Plaintiff, Defendant, and several other investors in Eduprise and HES allegedly entered into a written agreement which provided, *inter alia*, that Defendant and others would transfer all of their interest in HES to Plaintiff and would grant Plaintiff an irrevocable option, exercisable at any time, to purchase interest in Eduprise at a price of $1.00 for each 1% of equity held by them. Compl. at ¶ 13. Thereafter, Plaintiff believes that he exercised the option to purchase all of Defendant's interest in Eduprise, which consisted of 23 percent, by sending to Defendant, via Federal Express, a check in the

amount of $23.00. *Id.* at ¶ 14.

In the middle of 2005, Defendant learned that Sonoma College was attempting to "go public." Sherman Decl. at ¶ 11. Accordingly, Defendant tried to obtain information relating to the transaction from Plaintiff. *Id.* Plaintiff refused to provide any information. *Id.* On or about May 20, 2005, Defendant, via his attorneys, sent Plaintiff a letter stating that he believed that he continued to own an interest in HES, Eduprise, and/or their successors in interest; that he had a right to "come to the Company's offices to review copies of all documents required to be kept pursuant to Title 2.5, Chapter 2, Section 17058" of the California Corporations Code; and that he was revoking "any and all offers of any kind as may have been made in the past or which [Plaintiff] believe[d] may now exist." Compl. at ¶ 15, Ex. B. Although Plaintiff informed Defendant that Defendant had transferred all of his rights, titles, and interests in Eduprise and HES to Plaintiff, Defendant insisted that he still held such interests. *Id.* at ¶ 16.

**B.      Procedural History**

On June 14, 2005, Plaintiff commenced an action against Defendant in the Superior Court of California in and for the County of Sonoma. The Complaint alleges a single cause of action for declaratory relief.[3] Defendant was served with the summons and Complaint on June 22, 2005.

On July 22, 2005, Defendant removed the action to this Court. Also on July 22, 2005, Defendant filed the instant Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, To Transfer Venue (hereinafter "Motion to Dismiss"). Defendant also filed a Request for Judicial Notice.[4]

---

[3] Specifically, Plaintiff seeks a declaration from the Court stating that "Defendant has sold, transferred, and conveyed all of his rights, titles, and interests in Eduprise and HES to Newman and therefore has no remaining rights, titles or interests related to Eduprise or HES." *See* Compl. at 5:4-7.

[4] In Defendant's Request for Judicial Notice, Defendant requests that the Court take judicial notice of the Complaint filed in this action. This pleading is part of the Court's own docket in this matter, and therefore a formal request for judicial notice is unnecessary. However, since Defendant has made such a formal request, and since the document is judicially noticeable, his request is hereby GRANTED.

4

///

///

## LEGAL STANDARD

**A.     Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) provides the district court with the authority to dismiss an action for lack of personal jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). In order to withstand a motion to dismiss for lack of personal jurisdiction in the initial stages of litigation, the plaintiff need only "make, through [his] pleadings and affidavits, a prima facie showing of the jurisdictional facts." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001). "That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In ruling on a Rule 12(b)(2) motion, the pleadings are to be viewed in a light most favorable to plaintiff and all doubts are to be resolved in his favor. *See Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 n.1 (9th Cir. 1995).

There are two types of personal jurisdiction: general and specific. *Reebok International, Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir.), *cert. denied*, 516 U.S. 908 (1995). The presence of either general or specific jurisdiction will sustain the exercise of personal jurisdiction over a defendant. *Rano v. SIPA Press, Inc.*, 987 F.2d 580, 587 (9th Cir. 1993). General jurisdiction exists where it is established that the defendant has "continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (citation omitted). In the present case, Plaintiff's assertion of jurisdiction is based on specific jurisdiction.

There are two components to specific jurisdiction. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). The exercise of personal jurisdiction must comport with (1) the forum state's long arm statute and (2) the constitutional requirement of due process. *Id.* As to the first inquiry, California's long-arm statute, California Code of Civil Procedure § 410.10, provides for personal jurisdiction to the full extent allowed by the requirements of due process. *Id.* As such, "the question is whether exercising

1  jurisdiction over defendants would offend due process." *Id.*

2  This Circuit has set forth a three-part test to determine whether a district court's exercise of
3  specific jurisdiction comports with due process:

4  (1)  The nonresident defendant must do some act or consummate some transaction with the
5  forum or perform some transaction with the forum by which he purposely avails himself of the
6  privilege of conducting activities in the forum, thereby invoking the benefits and protections;
7  (2) the claim must be one which arises out of or results from the defendant's forum-related
8  activities; and
9  (3) exercise of jurisdiction must be reasonable.

10 *Ballard*, 65 F.3d at 1498 (citations and internal modification omitted).

11 Plaintiff bears the burden of meeting this test. *Haisten v. Grass Valley Medical Reimbursement*
12 *Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986).  In the event the plaintiff makes a prima facie showing
13 of purposeful availment and forum related activities, "a presumption of reasonableness" arises, which
14 the defendant bears the burden of overcoming.  *Id.*

15 The purposeful availment test focuses on whether a "defendant's conduct and connection with
16 the forum state are such that he should reasonably anticipate being haled into court there." *World Wide*
17 *Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  The focus on the defendant's affirmative
18 conduct is designed to ensure that the defendant is not haled into court as a result of "random, fortuitous
19 or attenuated contacts." *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir. 1990).
20 "Purposeful availment analysis examines whether the defendant's contacts with the forum are
21 attributable to his own actions or are solely the actions of plaintiff." *Sinatra v. National Enquirer*, 854
22 F.2d 1191, 1195 (9th Cir. 1988).

23 A non-resident defendant's act of soliciting business in the forum state will generally be
24 considered purposeful availment if the solicitation results in contract negotiations or the transaction of
25 business.  *See Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir.1990), *rev'd on other grounds*,
26 499 U.S. 585 (1991); *Sinatra*, 854 F.2d at 1195 (same); *Pure, Ltd. v. Shasta Beverages, Inc.*, 691 F.

Supp. 1274, 1277-79 (D. Haw. 1988) (Hawaii district court had personal jurisdiction over defendant which had knowingly interfered in "a contract that has, on its face, substantial connections with Hawaii.").

**B.      Transfer of Venue**

In general, 28 U.S.C. § 1391(a) provides that:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). If an action is filed in the wrong venue, 28 U.S.C. § 1406 provides that the district court may "dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406.

A motion to change venue is governed by 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where the action might have been brought." 28 U.S.C. § 1404(a). The purpose of the section is to "prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)).

The burden is on the moving party to demonstrate that the balance of conveniences favors the transfer. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). In general, the moving party "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum," *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1985), and "a plaintiff's choice of forum is ordinarily given great weight." *Allegiance Healthcare Corp. v. London Int'l Group, PLC*, 1998 WL 328624, * 1 (N.D. Cal. 1998) (citing *Grubs v. Consolidated Freightways, Inc.*, 189 F. Supp. 404, 409 (D. Mont. 1960)). However, when the plaintiff has filed suit

in a forum that is not his residence, substantially less deference is given to his choice of forum. *See Panetta v. SAP America, Inc.*, 2005 WL 1774327 * 5 (N.D. Cal. 2005) (citing *Pac. Car & Foundry Co. v. Spence*, 403 F.2d 949, 954 (9th Cir. 1968)).

To support a motion for transfer, the moving party must establish: (1) that venue is proper in the transferee district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice. *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). A motion to transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

In determining the convenience of the parties and witnesses and the interests of justice, a Court may consider a number of factors including: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum. *Jones*, 211 F.3d at 498-99.

## ANALYSIS

### A.     Defendant's Motion to Dismiss

In the instant Motion to Dismiss, Defendant argues that this Court cannot exercise personal jurisdiction over him because: (1) he never purposefully availed himself of the privileges of conducting activities in California; (2) the alleged controversy does not arise out of his contacts with California; and (3) California is not a reasonable forum. Defendant alternatively argues that venue is not proper in this jurisdiction and therefore the case should be dismissed pursuant to 28 U.S.C. § 1406(a) or that, even if it is proper, venue in California is not convenient and the action should be transferred to Florida pursuant to 28 U.S.C. § 1404(a). In response, Plaintiff argues that Defendant has had sufficiently significant contacts with California which justify the exercise of jurisdiction over him. Plaintiff also

argues that venue is proper and that a transfer of this action to Florida would be improper because Florida is not a convenient forum for Plaintiff or other potential witnesses.

### 1.   Personal Jurisdiction

In order to establish personal jurisdiction, Plaintiff must show that Defendant purposely availed himself of the privilege of conducting activities in this forum, thereby invoking the benefits and protections of California. *Ballard*, 65 F.3d at 1498. The "purposeful availment" requirement is designed to ensure that the defendant is not hailed into court based on random, fortuitous, or attenuated contacts. *Burger King Corp.*, 471 U.S. at 475. Here, the underlying factual basis of the instant lawsuit is Plaintiff's assertion that Defendant no longer has an ownership interest in two California limited liability companies, Eduprise and HES. Defendant admits that these companies are located in California, that he served as the managing director of the companies, and that he invested a substantial amount of capital into these companies. *See* Sherman Decl. at ¶ 7, Ex. B (Operating Agreement). He also admits that the operations of both companies are governed by California law. *See id*. Since Defendant's ownership interests are directly related to these California companies, the Court finds that Defendant availed himself of the benefits of California law. Further, Plaintiff has produced evidence that, in connection with Defendant's fiduciary interests in Eduprise and HES, Plaintiff visited California on at least four prior occasions. *See* Sherman Decl. at ¶¶ 4-7. While Defendant disputes that he was in California on these occasions, on a motion to dismiss for lack of personal jurisdiction, conflicts in affidavits must be resolved in Plaintiff's favor. *AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996).

Additionally, the Court finds that Defendant's reliance on *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1108 (C.D. Cal. 1999) is misplaced. In *Colt,* the basis for the suit was a Florida corporation's alleged infringement of copyrighted material through the publication of certain photographs on the corporation's website. *Id.* at 1106. The sole connection between California and the defendant company was the fact that 2,100 of its 17,000 internet subscribers resided in California. *Id.* at 1109. The individual defendants, both Florida residents and company employees, were found not to

have had sufficient minimum contacts with California because the plaintiff produced no evidence that the individual defendants ever transacted any business in California. *Id.* at 1112. As such, *Colt* is not apt. Here, Defendant was not an employee of Eduprise or HES, but was, instead, a shareholder and investor in the California companies. Moreover, unlike *Colt*, Eduprise and HES are not defendants, and this lawsuit is not premised on the companies' actions. Further, as noted above, the evidence suggests that Defendant personally conducted business relating to the entities and his own ownership interest in HES and Eduprise in California on several occasions. When viewed in the aggregate and in the light most favorable to Plaintiff, the Court finds that Plaintiff's pleadings and evidence are sufficient to sustain a prima facie case of purposeful availment.

The second component of the specific personal jurisdiction test requires that the cause of action alleged against Defendant arise out of Defendant's forum-related activities. *Ballard*, 65 F.3d at 1498. Defendant argues that this component has not been met because "[n]o allegation of the Complaint ties [his] trips on corporate business to any alleged breach or dispute in connection with the purported agreement made between Plaintiff and [Defendant] which is the subject of this action." *See* Reply at 2. Defendant's argument, however, is inconsistent with the premise of Plaintiff's lawsuit. Further, if true, Defendant's argument would completely eviscerate the basis for subject matter jurisdiction asserted in Defendant's own Notice of Removal. *See* Not. of Rem. at ¶ 4 (stating that the Court must measure the amount in controversy by the value of the object of the litigation and alleging that the amount in controversy is between $1,500,000 and $10,000,000 "by virtue of the fact that [Defendant] invested and/or loaned approximately one million five hundred thousand dollars ($1,500,000) in connection with the entities . . . [and] has compulsory counterclaims against [Plaintiff] in excess of ten million dollars ($10,000,000)."). Viewing the allegations of the Complaint in the light most favorable to Plaintiff, it is clear that the heart of this dispute is Defendant's ownership rights relating to Eduprise and HES. Accordingly, Plaintiff has established that the action arises out of Defendant's forum-related activities.

Last, Defendant has not shown that California is a constitutionally unreasonable forum. "Once minimum contacts is shown, a rebuttable presumption arises that the exercise of jurisdiction is

1 reasonable." *Sinatra*, 854 F.2d at 1195. The defendant bears a "heavy burden" of overcoming this 2 presumption. *Ballard*, 65 F.3d at 1195. To meet this heavy burden, the defendant must "present a 3 compelling case that the presence of some other considerations would render jurisdiction unreasonable." 4 *Id.* (quoting *Burger King*, 471 U.S. at 477). Defendant has not presented any arguments sufficient to 5 show that litigating in California would be *constitutionally* unreasonable. Instead, he merely asserts that 6 requiring him to defend this action in California "is excessive and could and most likely will cause 7 financial hardship." Mot. at 9. As stated by the United States Supreme Court in *Burger King*, with 8 respect to a personal jurisdiction analysis, it is not enough to demonstrate that some other forum is more 9 reasonable than California. *Burger King*, 471 U.S. at 478. Instead a defendant must show that 10 jurisdiction in California would make the litigation "so gravely difficult and inconvenient that a party 11 unfairly is at a severe disadvantage in comparison to his opponent." *Id.* This Defendant has not done. 12 Indeed, as the Ninth Circuit noted in *Sher v. Johnson*, 911 F.2d 1357, 1365(9th Cir. 1990), absent 13 unusual circumstances, "[i]n this era of fax machines and discount air travel," requiring Defendant to 14 defend a lawsuit in California, even when he resides on the other side of the country, is not so 15 unreasonable as to violate due process. *Sher*, 911 F.2d at 1365.[5]

16 Accordingly, the Court concludes that Plaintiff has established that this Court has personal 17 jurisdiction over Defendant.

18 **2.    Venue**

19 Since the Court concludes that it has personal jurisdiction over Defendant, then, pursuant to 28 20 U.S.C. § 1391(a)(3), California venue is proper and Defendant's motion to dismiss pursuant to 28 U.S.C. 21 § 1406(a) is misplaced. However, this Court must also consider Defendant's arguments under 28 U.S.C. 22 § 1404 and determine whether transfer of this case to the Southern District of Florida would be in the 23 best interests of justice and would be more convenient for all of the parties and witnesses. Here, 24 Defendant has presented compelling arguments that venue in Florida would be substantially more

---

26 [5]Further, the Ninth Circuit has recognized that inconvenience to the defendant "is more appropriately handled not as a challenge to jurisdiction, but as a factor supporting a change in venue." 27 *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 387 (9th Cir. 1990).

28                                                                 11

convenient for all of the parties and witnesses.

To support a motion for transfer of venue, Defendant must establish: (1) that venue is proper in the transferee district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice. *See Goodyear Tire & Rubber Co.*, 820 F. Supp. at 506. It is beyond dispute that Defendant's motion to transfer venue satisfies the first two criteria. Since this is a diversity action, under 28 U.S.C. § 1391(a), venue is proper in the Southern District of Florida because the Southern District of Florida is the judicial district where Defendant resides.

Further, after weighing the *Jones* factors, it is clear that transfer to Florida would serve the convenience of the parties and witnesses and would promote the interests of justice. In determining the convenience of the parties and witnesses and the interests of justice, the following *Jones* factors are relevant here: (1) Plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; and (4) ease of access to the evidence. *Jones*, 211 F.3d at 498-99. As to the first factor, while a plaintiff's choice of forum is ordinary given great weight, the plaintiff's choice is afforded substantially less weight when the plaintiff has commenced the action in a forum that is not his residence. *See Panetta*, 2005 WL 1774327 * 5 (citing *Pac. Car & Foundry Co.*, 403 F.2d at 954). Here, Plaintiff admits that he is a resident of New York. *See* Newman Decl. at ¶ 1. Accordingly, this factor does not weigh in favor of a California venue.

Further, the evidence does not support a finding that a California venue would be more convenient for either Plaintiff or Defendant. Defendant's position is that California is not a convenient forum and that being forced to litigate on the west coast would serve as a hardship. To counter this, Plaintiff merely asserts that California is a "much more convenient forum for this lawsuit than the Southern District of Florida because [Plaintiff] regularly visit[s] Northern California in connection with Eduprise and HES." However, Plaintiff's desire to combine his business trips to California with this litigation is not a compelling or persuasive reason when it is beyond dispute that the distance both parties would have to travel to litigate this action in Florida is *significantly* less than the distance to

California.

Additionally, it appears that a Florida venue would be more convenient for the witnesses in this action because all of the identifiable witnesses reside on the east coast. For example, the one witness identified by Defendant, Edward Cummings ("Cummings), resides in New Jersey. *See* Decl. of Edward L. Cummings ("Cummings Decl.") at ¶ 2. Cummings has stated an express preference for an east coast venue. *See id.* at ¶ 7. The sole witness identified by Plaintiff, David Weaver ("Weaver"), also resides in New Jersey. *See* Decl. of David Weaver ("Weaver Decl.") at ¶ 1. Further, while Plaintiff states that "many of the witnesses [he] intend[s] to call on in support of this lawsuit are employees of Eduprise and/or HES, and either reside in California or regularly visit California in connection with Eduprise and HES," the evidence does not appear to support this assertion. For example, according to the Eduprise Operating Agreement, all of the other parties to the alleged contract appear to be residents of either New York or New Jersey. *See* Compl. at Ex. A; Sherman Decl. at Ex. B (Operating Agreement).[6] Specifically, Leon Y. Lee is a resident of New York, Benee Scola is a resident of New Jersey, and Susan Blauvet is also a resident of New Jersey. *See* Sherman Decl. at ¶ 7, Ex. B. Further, one other former investor, Donn Wagner, is a resident of New York. *Id.* Additionally, while it may be true that certain employees of Eduprise or HES are residents of California, none of these persons has been identified and, at any rate, it is not clear how an employee of Eduprise or HES would have testimony pertinent to the formation of a contract between the company's investors.

For the same reasons, the "ease of access to evidence" factor does not weigh in favor of a California venue. Plaintiff assertion that "all of the relevant documentary evidence related to Eduprise and HES is located in California" is false. First, neither Eduprise nor HES is a party to this lawsuit. Further, to the extent that the companies' records are relevant, Defendant has stated that the records are also in the possession of Weaver, who resides in New Jersey.[7] *See* Sherman Decl. at ¶ 6. Second, it is

---

[6] Defendant avers in his affidavit that it is his belief that the addresses set forth in the 2000 Operating Agreement are the relevant persons' current addresses. *See* Sherman Decl. at ¶ 7.

[7] Weaver does not appear to dispute Defendant's statement. *See* Weaver Decl. at ¶¶ 1-3.

13

quite apparent from the Complaint and the affidavits before the Court that the parties entered into the relevant contract through a series of facsimile and telephone correspondence that took place in New York, New Jersey and Florida. In fact, the Court may quite reasonably presume that all of *Defendant's* evidence relating to his alleged agreement with Plaintiff is with the Defendant in Florida. Accordingly, venue in Florida would provide the most convenient access to the majority of the relevant evidence.

In sum, have considered all of the relevant *Jones* "convenience" factors, the Court finds that there is clear support for Defendant's request to transfer venue to Florida.

## **CONCLUSION**

IT IS HEREBY ORDERED THAT Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Docket No. 3] is DENIED. However, Defendant's alternative Motion To Transfer Venue Pursuant to 28 U.S.C. § 1404(a) [Docket No. 3] is GRANTED.

IT IS FURTHER ORDERED THAT Defendant's Request for Judicial Notice [Docket No. 4] is GRANTED.

IT IS FURTHER ORDERED THAT the parties' Stipulation to Continue Hearing [Docket No. 22] is DENIED AS MOOT.

IT IS FURTHER ORDERED THAT this case is TRANSFERRED to the United States District Court for the Southern District of Florida. The Clerk is directed to close the file and to terminate any pending matters.

IT IS SO ORDERED.

Dated: 10/24/05

SAUNDRA BROWN ARMSTRONG
United States District Judge